**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COGNEX CORP., and COGNEX TECHNOLOGY & INVESTMENT LLC, <br><br>         Plaintiffs, <br><br> v. <br><br> MICROSCAN SYSTEMS, INC., and THE CODE CORPORATION, <br><br>         Defendants. | Civil Action No. 13 Civ. 02027 (JSR) <br><br> **JURY TRIAL DEMANDED** |

## MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Jacob K. Baron (*NY Lic. No. 4039905*)
Joshua C. Krumholz
(*admitted pro hac vice*)
Zachary A. Weinman
(*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
10 St. James Ave., 11th Floor
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850
jacob.baron@hklaw.com
joshua.krumholz@hklaw.com
zachary.weinman@hklaw.com

Christopher M. Scott (CS5219)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010
christopher.m.scott@hklaw.com

*Attorneys for Plaintiffs Cognex Corporation and Cognex Technology and Investment LLC*

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ................................................................................................4

III.    LEGAL STANDARD ........................................................................................4

IV.     ARGUMENT .....................................................................................................5

        A.      Cognex Is the Prevailing Party ...............................................................5

        B.      This Case Is Exceptional in Light of Microscan's Defenses and Litigation
                Tactics .....................................................................................................6

                1.      Defendants Maintained Substantively Weak, Objectively
                        Unreasonable Defenses and Other Litigation Positions Without A
                        Good-Faith Basis ........................................................................6

                        a.      Microscan Lacked a Good-Faith Basis for Maintaining Its
                                Non-Infringement Defense .............................................6

                        b.      Microscan Lacked a Good-Faith Basis for Asserting That the
                                HawkEye 51 Light Pipe Anticipates Claims 1 and 30 of the
                                '487 patent .....................................................................9

                        c.      Microscan Lacked a Good-Faith Basis for Asserting That the
                                '487 Patent Was Procured Through Inequitable Conduct ............12

                        d.      Microscan Lacked a Good-Faith Basis for Asserting That
                                Cognex Was Not Entitled to Its Lost Profits ................13

                2.      Defendants Tried to Bury Cognex and the Court Under Numerous
                        Motions in Order to Make Enforcement of Cognex's Patent Rights
                        More Expensive ...........................................................................15

                3.      Microscan's Disregard for Cognex's Patent Rights Makes This Case
                        Exceptional .................................................................................18

        C.      An Award of Attorneys' Fees Is Necessary to Adequately Compensate
                Cognex and Appropriate to Deter Defendants' Commercial and Litigation
                Misconduct..............................................................................................19

                1.      Microscan's Commercial Misconduct Evinces an Utter Disregard for
                        Cognex's Patent Rights................................................................19

                2.      Microscan's Litigation Misconduct Unnecessarily Increased the Cost
                        of Litigation ................................................................................21

                3.      The Case Was Not Close ..............................................................22

V.      CONCLUSION..................................................................................................22

#29547566_v5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.,*
    24 F.3d 178 (Fed. Cir. 1994)................................................................2, 18

*Cargill Inc. v. Sears Petroleum & Transport Corp.,*
    388 F. Supp. 2d 37 (N.D.N.Y. 2005)....................................................21

*Creative Internet Adver. Corp. v. Yahoo! Inc.,*
    689 F. Supp. 2d 858 (E.D. Tex. 2010)..................................................22

*Etna Products Co., Inc. v. Q Marketing Group, Ltd.,*
    No. 03 Civ. 3805 (SAS), 2004 WL 1769794 (S.D.N.Y. Aug. 6, 2004) ........................ *passim*

*Inland Steel Co. v. LTV Steel Co.,*
    364 F.3d 1318 (Fed. Cir. 2004).............................................................5

*Muller v. Twentieth Century Fox Film Corp.,*
    No. 08 CIV. 2550, 2011 WL 3678712 (S.D.N.Y. Aug. 22, 2011) .........................21

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.,*
    No. 12-1184, slip op. (Sup. Ct. April 29, 2014) ............................................ *passim*

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.,*
    781 F.2d 198 (Fed. Cir. 1986)............................................................5, 22

*Superior Fireplace Co. v. Majestic Prods. Co.,*
    270 F.3d 1358 (Fed. Cir. 2001).............................................................5

**Statutes**

35 U.S.C. § 285.................................................................................3, 4, 18, 22

**Other Authorities**

Fed. R. Civ. P. 54...................................................................................3

James Wm. Moore, et. al, Moore's Federal Practice (3d. ed. 2009)................................3

iii

Plaintiffs Cognex Corp. and Cognex Technology & Investment LLC (collectively, "Cognex") submit this Memorandum in Support of Motion for Attorneys' Fees.

## I.     INTRODUCTION

Cognex respectfully requests that the Court declare this an exceptional case and award Cognex its reasonable attorneys' fees.  Under the new standard articulated by the Supreme Court in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, an exceptional case is simply one that stands out with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated.  *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, No. 12-1184, slip op. (Sup. Ct. April 29, 2014), at 7-8.  The Supreme Court lowered the standard of proof for exceptionality as well.  *See id.* at 11.  A party seeking an award of attorneys' fees now must only prove a case is exceptional by a preponderance of the evidence. *See id*.

This case is exceptional under both prongs of the test articulated in *Octane Fitness*.  First, Microscan Systems, Inc.'s ("Microscan") defenses and other litigation positions were substantively weak, objectively unreasonable, and lacked a good-faith basis:

- Notwithstanding its claims to the contrary, Microscan never applied the Court's claim construction of "light pipe," instead basing its non-infringement defense on a novel claim construction argument not advanced at the *Markman* stage.

- Microscan's technical expert parroted the word "frosted" from the party's agreed construction in arguing that the HawkEye 51 anticipates claims 1 and 30 of the '487 patent, but provided no explanation as to how a structured pattern of concentric tool marks could create a "frosted surface texture that diffuses light."

- Microscan's attorney misinformed the jury that the only disclosure related to the HawkEye that Cognex provided to the Patent Office was a picture of the bright field light pipe, when he knew that Cognex had disclosed an international patent application that disclosed every feature of the HawkEye's dark field light pipe.

- The best, and only, documentary evidence that Microscan put forward that it altered its global distribution so that Mobile Hawks bound for customers in Europe never passed through the United States was a single UPS shipping invoice for Mobile Hawk *accessories*, and Microscan provided its expert incomplete information concerning the U.S. activities of its co-defendant, Code Corporation ("Code"), that was contradicted by the testimony of Code's corporate designee.

Second, this case is exceptional because Microscan's unreasonable litigation tactics made it unnecessarily expensive for Cognex to enforce its patent rights.  In addition to its objectively unreasonable defenses, Microscan filed numerous meritless motions that substantially increased the cost of the litigation.  Microscan's filings included a frivolous motion for summary judgment of indefiniteness, a motion for sanctions that resulted in depositions that it never took, and frivolous *Daubert* motions.  The common thread between these motions is that, each one, if granted, could have been effectively case dispositive, meaning that even though they were baseless, Cognex was obliged to expend significant litigation resources rebutting them.  Microscan, like any litigant, has every right to defend itself within the applicable rules.  However, the Patent Act expressly empowers the Court to require that Microscan, not Cognex, bear the cost of maintaining objectively unreasonable defenses and swamping Cognex and the Court with meritless motions.

2

Additionally, the jury's finding of willfulness, by itself, is sufficient to support a finding that this case is exceptional.  *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184 (Fed. Cir. 1994) (affirming determination that case was exceptional based on jury's finding of willful infringement); *Etna Products Co., Inc. v. Q Marketing Group, Ltd.*, No. 03 Civ. 3805 (SAS), 2004 WL 1769794, at *15 (S.D.N.Y. Aug. 6, 2004) ("[A] court must explain why the case is not exceptional within the meaning of section 285 if it does not award attorney's fees where it finds willful infringement.")  The clear and convincing evidence that supports the jury's finding that Microscan willfully infringed the '487 patent eloquently states the case for an award of attorneys' fees.  The evidence demonstrates that after being put on notice of the infringement allegations against the Mobile Hawk, Microscan immediately recognized a high risk that the Mobile Hawk infringed the '487 patent and that the '487 patent was valid.  Rather than halting sales, redesigning its product, or seeking a license to practice the '487 patent, Microscan sought to conceal its infringement, reduce its financial exposure in the event it was found liable, and continued selling an infringing product without altering its design.  An award of attorneys' fees will send a message to Microscan and other infringers who perform a similar calculus and determine that they can afford to infringe.

Cognex estimates that, from the start of the litigation through today, it has incurred approximately $2,500,000 in attorneys' fees in enforcing its rights.[1]  Awarding Cognex its fees is

---

[1] Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, Cognex is not at this time submitting the evidentiary materials supporting the calculation of its fees.  *See* Fed. R. Civ. P. 54 Advisory Committee's Notes, 1993 Amendments; 10 James Wm. Moore, et. al, Moore's Federal Practice ¶ 54.155 (3d. ed. 2009) ("The initial fee motion need only state the basis for a fee award and an initial estimate of the amount sought.  Later evidentiary submissions provide the factual proof of the amount claimed.").  If the Court grants Cognex's motion, Cognex requests thirty days from the date of such order to submit the requisite documentation of its reasonable attorneys' fees and disbursements.

necessary to fully compensate Cognex for Microscan's infringement and will serve as an

appropriate deterrent to Microscan's aggressive conduct in the marketplace and in this litigation.

## II.   BACKGROUND

On April 30, 2014, after a six-day trial, a jury unanimously found that Microscan and

Code (collectively, "Defendants") infringed claims 1 and 30 of U.S. Patent No. 7,874,487 ("the

'487 patent") and that those claims are valid.  Trial Transcript ("Trial Tr.") (Declaration of Jacob

K. Baron ("Baron Decl.") Ex. 1) at 904:24-905:9.  The jury unanimously awarded Cognex

compensatory damages of $2,578,286, the full amount requested.  Trial Tr. 905:10-13.  The jury

also unanimously found that, by clear and convincing evidence, Microscan's infringement was

willful.  Trial Tr. 905:14-17.  Prior to reading the jury's verdict, the Court denied Defendants'

inequitable conduct defense.  Trial Tr. 903:4-904:14.

## III.   LEGAL STANDARD

The Patent Act contains an express statutory exception to the American Rule which

authorizes courts to shift fees in certain circumstances: "The court in exceptional cases may

award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  "The determination of

an award of attorney's fees pursuant to section 285 is a two-step inquiry: first, the trial court

must determine whether the case is exceptional; if so, it is then within the court's discretion to

award attorney's fees to the prevailing party."  *Etna Products Co., Inc. v. Q Marketing Group,*

*Ltd.*, No. 03 Civ. 3805 (SAS), 2004 WL 1769794, at *15 (S.D.N.Y. Aug. 6, 2004).

A party seeking an award of attorneys' fees must prove a case is exceptional by a

preponderance of the evidence.  *See Octane Fitness*, No. 12-1184, slip op. at 11.  ("Section 285

demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less

such a high one.").  "[A]n 'exceptional' case is simply one that stands out from others with

respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 7-8. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 8. Relevant circumstances may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 8 n. 6.

Upon finding that a case is exceptional, the Court may, at its discretion, award fees. *Etna*, 2004 WL 1769794 at *15. "[T]he test for determining whether to award attorney's fees revolves around the conduct of the infringing party." *Id.* In determining whether an award of fees is justified, the Court may in its discretion weigh factors including the degree of culpability, litigation behavior, and the closeness of the case. *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed. Cir. 2001); *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986).

## IV.   <u>ARGUMENT</u>

### A.   Cognex Is the Prevailing Party

A prevailing party is one that has achieved at least some relief on the merits of the litigation "which alters . . . the legal relationship of the parties." *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004) (omission in original) (internal quotations omitted). Cognex prevailed on the merits on every issue at trial. The jury found both asserted claims valid and infringed. Trial Tr. 904:24-905:9. The jury awarded Cognex compensatory damages of $2,578,286, the full amount requested. Trial Tr. 905:10-13. The jury also unanimously found that, by clear and convincing evidence, Microscan's infringement was willful. Trial Tr. 905:14-

17.  The Court rejected Microscan's argument that the asserted claims were unenforceable due to inequitable conduct. Trial Tr. 903:4-904:14.  Clearly, Cognex is the prevailing party.

**B.    This Case Is Exceptional in Light of Microscan's Defenses and Litigation Tactics**

This case is exceptional because Microscan maintained substantively weak defenses and other litigation positions without a reasonable, good-faith basis, and because it filed meritless motions as a tactic to make Cognex's enforcement of its patent rights more expensive.  *See Octane Fitness*, *Octane Fitness*, No. 12-1184, slip op. at 7-8.  ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.").

**1.    Defendants Maintained Substantively Weak, Objectively Unreasonable Defenses and Other Litigation Positions Without A Good-Faith Basis**

**a.    Microscan Lacked a Good-Faith Basis for Maintaining Its Non-Infringement Defense**

Microscan's primary non-infringement defense in this action was that the Mobile Hawk does not have a light pipe.  During claim construction, Microscan tried to inject a length requirement into the construction of light pipe.  Defendants' Claim Construction Response Brief [D.E. 57] at 14-22.  Once that failed, Microscan should have conceded infringement.  Instead, Microscan purported to pay lip service to the Court's construction, but ignored it entirely while proffering a new, improper and untimely claim construction argument.

During trial, Microscan's technical expert David Bubnoski acknowledged the Court's claim construction.  Trial Tr. 702:4-6.  However, Mr. Bubnoski's opinion that the Mobile Hawk did not have a light pipe was not based on the application of the Court's construction to the

accused structure in the Mobile Hawk.  Rather, Mr. Bubnoski testified that the Mobile Hawk's

"prism" is not a light pipe because it is just the distal end of the light pipe:

> Q.  Mr. Bubnoski, do you, in your opinion, does the Mobile Hawk embody the
> light pipe claimed by claim 1 of the '487 patent?
>
> A.  No.
>
> Q.  Why not?
>
> A.  Because the prism is not a light pipe.  It is the distal end.  It acts and acts as
> such.

Trial Tr. 702:8-13.  Not only was this argument not based on the Court's claim construction, but

Microscan failed to raise this argument at the appropriate time, either during the *Markman*

briefing or at oral argument.  Trial Tr. 717:22-718:5.  In response to this argument, Cognex was

forced to put forward a new jury instruction to counteract Microscan's new argument.  Trial Tr.

831:10-832:8.  That jury instruction explained that one accused structure would satisfy more than

one claim limitation.  *Id.*  Notably, Microscan could find no basis to object to that instruction.

*Id.*  It appears that Microscan simply hoped that Cognex would not bring it up.

Further, on cross-examination, Mr. Bubnoski all but conceded that the Mobile Hawk's

light pipe meets the Court's construction of light pipe as a "hollow cylinder or tube that transmits

light":

> Q.  Do you have a Mobile Hawk light pipe?
>
> A.  Yes.
>
> Q.  Is it hollow?
>
> A.  In the interior area of the prism, yes.
>
> . . .
>
> Q.  And it transmits light, correct?

7

A.  Light enters the prism and is reflected and refracted off the chamfered end.

Q.  Light goes through it, correct?

 A.  Yes.

. . .

Q.  And a tube can be any shape, right?  Could be a circle?

A.  Yes.

Q.  Could be round?

A.  Sure.

Q.  Could be rectangular?

A.  Sure.

. . .

Q.  And there's nothing in the claim requiring any length of tube.  Is that right?

A.  No.

Q.  Could be short?

A.  Yes.

Q.  Could be long?

A.  Yes.

Trial Tr. 730:18-731:20.  Mr. Bubnoski also conceded on cross-examination that the Mobile

Hawk's light pipe is rectangular.  Trial Tr. 733:4-7. Microscan's argument that the Mobile

Hawk's light pipe was not a "hollow, cylinder or tube that transmits light" therefore lacked any

good-faith basis.

8

      **b.**     **Microscan Lacked a Good-Faith Basis for Asserting That the HawkEye 51 Light Pipe Anticipates Claims 1 and 30 of the '487 patent**

At trial, Microscan argued that the light pipe used with the HawkEye 51 handheld reader ("HawkEye 51") anticipates claims 1 and 30 of the '487 patent. However, Microscan lacked a good-faith basis for that argument. Microscan's technical expert witness, Mr. Bubnoski, testified that the HawkEye 51's dark field light pipe had a diffusive surface texture, but he did so by merely parroting the word "frosted" from the parties' agreed construction without providing any analysis of how structured tool marks could create frosting or diffusion. Trial Tr. 676:2-6. Moreover, Mr. Bubnoski testified that he was able to accurately date the Auto Image ID ("AIID") sales brochures by the "date code" on the face of these brochures, except he also testified that the date code on the one brochure that happened to allegedly corroborate his testimony was "incorrect." Trial Tr.721:23-722:4.

More specifically, the dispute between the parties regarding anticipation centered on whether the HawkEye 51's dark field light pipe had the claimed "diffusive surface texture" on the outer surface of its chamfered distal end. The parties agreed to a construction of "diffusive surface texture" as "frosted surface texture that diffuses light." [D.E. 58-1]. To the extent the HawkEye 51's dark field light pipe ever had a surface that was not polished, it merely had tool marks from the lathing process. Trial Tr. 728:1-729:4. Microscan's technical expert, Mr. Bubnoski, testified that the HawkEye 51's dark field light pipe with those tool marks was "frosted." Trial Tr. 676:2:6. However, he gave no basis for that opinion, and Cognex is aware of none.

In contrast, Cognex's technical expert, Dr. Eastman, explained that diffusion requires a random surface pattern that scatters light in all directions:

Q.  We heard a little bit about another type of illumination called diffuse illumination. Can you explain diffuse illumination?

A.  Sure.  Diffuse illumination is illumination that the light comes at the target from all directions.  Diffuse illumination means that if you have a beam of light and you put it through a diffuser or a frosted surface, the beam scatters in all directions.  That will illuminate shadows and can be very useful in some reading situations as well.

Trial Tr. 321:25-322:8.  Dr. Eastman further explained that tool marks from a lathe would create a structured pattern that would diffract light in one direction rather than diffusing light in all directions:

Q.  Okay.  And can you describe the surface of that light pipe?

A.  Yes.  This is apparently one of the light pipes where they stopped polishing it and they just left the turning marks on it.  And one thing you'll notice about this if you run your fingernail up and down the edge, you'll feel the texture.  If you move it in the other direction, you don't feel the texture and that's because these are turning marks.  They're concentric grooves around the surface that were made by a machine as it cut this angled surface.
If you do the same thing on the light pipe in the Mobile Hawk and you run your finger one way and you run your finger the other way, you'll feel the texture in both directions and that tells you that this device has a structured surface, whereas the Mobile Hawk prism has a rendered surface, a diffuse surface.

Q.  And is a structured surface a frosted surface texture that diffuses light?

A.  No, it's not.  It's more akin to a device called a diffraction grating that spreads light in one direction only.

Q.  And so would that light pipe provide a frosted surface texture that diffuses light?

A.  No, it would not.  As I said, diffusion means the light goes off in all directions.  Probably the most visually striking thing is a star burst from a firework going up.

Trial Tr. 384:2-25.

Despite ample opportunity to do so, Microscan never even attempted to refute Dr. Eastman's testimony.  Instead, Microscan's expert witness merely parroted back the "frosted"

language from the agreed construction, even though, at best, the tool marks on the HawkEye 51 dark field light pipe had a structured pattern that diffracted light in one direction.

Additionally, in connection with dating the HawkEye, Mr. Bubnoski testified that HawkEye 51 light pipes were originally manufactured with polished surfaces.  Trial Tr. 720:9-11. Mr. Bubnoski then testified that, at some point in late 2000, the polishing step was removed and the HawkEye 51 dark field light pipes were sold with tool marks.  Trial Tr. 720:12-16.  To corroborate Mr. Bubnoski's testimony that the change occurred late in the year 2000, he sought to use a sales brochure that allegedly depicts a HawkEye 52 with a diffusive surface texture. Trial Tr. 720:23-721:2.  Mr. Bubnoski testified that he could accurately determine the date of AIID's sales brochures by reference to date codes on the face of the brochures:

> Q.  Do you know what the date of DTX-20 is?
>
> A.  From the date Code in the lower left portion of this page, 11/17/1998.

Trial Tr. 660:9-11.

Yet, when it came to the critical brochure that purportedly showed the diffuse surface, that code was suddenly incorrect:

> Q.  So, let's look at Defendant's Exhibit 13.  Defendant's Exhibit 13 also has a code on it, does it not, at the bottom?
>
> A.  Yes.
>
> Q.  That seems to indicate December 10, 1998, right?
>
> A.  That's what it indicates, yes.
>
> Q.  So the codes aren't totally reliable?
>
> A.  The code is incorrect on this brochure.

Trial Tr.721:23-722:4.  Leaving aside the fact Microscan intended to use a brochure for the HawkEye 52 to corroborate the presence of a diffusive surface texture on HawkEye 51 – an entirely different product – it also sought to corroborate an event that allegedly occurred in the year 2000 with a document that bore, on its face, a date in 1998.   Microscan's anticipation argument simply lacked a good-faith basis.

> **c.**     **Microscan Lacked a Good-Faith Basis for Asserting That the '487 Patent Was Procured Through Inequitable Conduct**

Microscan's inequitable conduct defense also lacked a good-faith basis.  Inequitable conduct is a serious charge that here involved allegations of fraud against a specific individual, Dr. William Equitz, an inventor on the '487 patent.  Articulating the grounds for this defense at the start of trial, counsel for Microscan knowingly misled the jury and the Court by informing them that the only relevant disclosure by Cognex to the Patent Office was a printout of a website offering for sale the HawkEye's bright field light pipe.  Trial Tr. 77:2-8.  Microscan's counsel specifically told the jury and the Court that Cognex did not disclose the HawkEye's dark field light pipe to the Patent office:

> And while they prosecuted the patent for five and a half years, they did submit information to the patent office.  The front of the '487 patent lists a lot of stuff.  They sent eight different information disclosure statements to the patent office, and not one of them disclosed the HawkEye, and not one of them disclosed the HawkEye dark field light pipe.

Trial Tr. 77:17-22.

In fact, at that time, Microscan's counsel knew that Cognex had disclosed to the Patent Office an international patent application, WO 99/49347 ("the '347 application"), on which Mr. Bubnoski was a named inventor, that disclosed every feature of the HawkEye 51's dark field light pipe.  Dr. Equitz explained that the '347 application included all the features of the HawkEye 51's dark field light pipe:

#29547566_v5

> Q.  And you are making reference to another document. What document is that that you submitted to the patent office?
>
> A.  This is a patent application prepared by the inventors of the HawkEye, which we submitted to the patent office, and that describes in incredible detail – 12 pages long, four diagrams – exactly how the dark field light pipe works, including the bright field element and the dark field element.

Trial Tr. 255:13-20.

Moreover, Mr. Bubnoski testified falsely that the '347 application does not disclose that some bright field illumination is refracted through the outer surface of the chamfered end of the HawkEye 51's dark field light pipe.  Trial Tr. 691:1-8.  In fact, the '347 application discloses every aspect of the HawkEye's dark field light pipe, including that some light is refracted through its outer surface as bright field illumination:

> It has been observed that, especially when a clear, acrylic tube is used to form radiation directing device 101, a portion of incident radiation 10 is not deflected, put passes through outer wall 129 of deflector 120.

PTX 294 ('347 application) (Baron Decl. Ex. 2) at COG0009473; Trial Tr. 255:13-20.

Microscan's inequitable conduct defense was therefore not only baseless, it was intentionally misleading.

### d.   Microscan Lacked a Good-Faith Basis for Asserting That Cognex Was Not Entitled to Its Lost Profits

Microscan alleged that Cognex was not entitled to its lost profits because an acceptable non-infringing alternative was available throughout the damages period.  Trial Tr. 751:4-752:19; 754:5-754:24.  That supposed non-infringing alternative was a change to Microscan's global distribution pattern so that Mobile Hawks bound for customers in Europe never entered the United States, thereby never becoming subject to U.S. patent law.  Trial Tr. 562:1-12; 565:18-566:3; 751:4-752:20; 754:5-754:24; 757:8-758:5.  In other words, even as Microscan continued to sell Mobile Hawks, it sought to reduce its financial exposure from the infringement of the

#29547566_v5

'487 patent, not by changing its product so it no longer infringed, but by moving its distribution off shore.

Leaving aside the cynicism of that tactic, Microscan's best, and only, documentary evidence that such a change was ever made was a single UPS invoice for "scanner accessories":

> Q.  So, your testimony to the jury is that the best evidence that scanners are going straight to Europe is an invoice that actually lists scanner accessories on the invoice.  Is that right?
>
> A.  That is correct.

Trial Tr. 569:4-8; *see also* Trial Tr. 563:13-564:22; 779:6-780:25.  In fact, however, as late as March 2014, when the parties last exchanged financial information, sales of the Mobile Hawk to European customers were still being distributed through the United States.  Trial Tr. 569:16-570:5; 777:12-778:3.

Nevertheless, Microscan argued that non-U.S. distribution was a non-infringing alternative that was available going back to the start of the damages period, and that lost profits damages therefore should be unavailable.  Trial Tr. 566:7-566:21; 757:8-758:5.  That this supposed acceptable non-infringing alternative could not even be successfully implemented – even for Mobile Hawks bound for European customers – almost two years after Microscan was put on notice of infringement – renders  untenable Microscan's argument that this non-infringing alternative was available for all Mobile Hawks sold to customers worldwide at the start of the damages period.

Moreover, the opinion of Microscan's damages expert, Richard F. Bero,with respect to the availability of this supposed acceptable non-infringing alternative was based on information he obtained from Microscan that was, at best, incomplete.  Trial Tr.  781:20-787:3.  Microscan informed Mr. Bero that Microscan's co-defendant, Code, performed no manufacturing or

#29547566_v5

assembly in the United States.  Trial Tr. 786:15-787:3.  That representation, however, was flatly contradicted by the deposition testimony of Code's corporate representatives – testimony that Mr. Bero supposedly read.  Trial Tr. 786:10-787:3.  Code's Rule 30(b)(6) designee testified that Code finished assembly of every Mobile Hawk in Utah by installing firmware, attaching a cable, and testing the product.  Trial Tr. 782:19-786:14.  Meanwhile, Mr. Bero, for his part, failed to perform even minimal due diligence to verify the accuracy of the information he received from Microscan:

> Q.  Did you ever speak with Code Corporation?
>
> A.  I never spoke with anybody at Code, no.
>
> Q.  This entire case, all the due diligence that you did, all the analysis that you did, you never once spoke with anybody at Code?
>
> A.  I did not, no.

Trial Tr. 782:13-18.  For at least these reasons, Microscan's argument that Cognex was not entitled to lost profits damages was objectively unreasonable and lacked a good-faith basis.

## 2.     Defendants Tried to Bury Cognex and the Court Under Numerous Motions in Order to Make Enforcement of Cognex's Patent Rights More Expensive

This case is also exceptional because Microscan filed meritless motions as a tactic to make the enforcement of its patent rights more expensive for Cognex.  *Etna*, 2004 WL 1769794 at *15 ("[L]itigation tactics designed to increase expense" favor an award of attorneys' fees."). The inference that Microscan filed papers with the court as a tactic to make the litigation more expensive flows naturally from the objective unreasonableness of Microscan's arguments.

For example, Microscan filed a frivolous motion for summary judgment that claims 1 and 30 of the '487 patent are indefinite based entirely on a novel theory of indefiniteness that lacked any basis in the law.  Defendants' Memorandum of Law in Support of Motion for Summary

Judgment on Indefiniteness [D.E. 144].  As this Court noted in denying Microscan's Motion, Defendant's argument missed a "critical step" in its analysis and was squarely contradicted by controlling law.  April 4, 2013 Memorandum Order [D.E. 175] at 4-6 ("Federal Circuit precedent makes clear that '[t]he test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement.").  In point of fact, Microscan failed to cite any authority in support of the most important part of its argument, that if the claims have been construed and there are no disputes of fact as to the structure of the accused product and disputes of fact remain as to infringement, then the claims *must* be indefinite.  *See, e.g.*, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment on Indefiniteness [D.E. 144] at 5, 8 and 13.

Similarly, Microscan filed a Motion for Sanctions against Cognex seeking the harshest sanctions available, including dismissal of the entire case with prejudice, in response to alleged discovery violations committed by Cognex.  *See* Defendants' Memorandum of Law in Support of Defendants' Motion for Sanctions [D.E. 183] at 15.  Of course it is Microscan's right to seek relief from the Court.  However, in this instance, Microscan had already agreed in writing that a pair of depositions (for which Holland & Knight agreed to pay Microscan's fees) would cure any prejudice resulting from Cognex's late discovery.  Trial Tr. 25:1-26:22.  Microscan declined to take those depositions.  *Id.*  Then, once the Court granted Microscan permission to take two additional depositions on the topic of the HawkEye 51 reader, Trial Tr. 29:8-29:20, Microscan declined to take those depositions – a second time.  *See* Email from Stephen Wurth dated April 23, 2014 (Baron Decl. Ex. 3).  In short, Microscan filed a motion seeking terminal sanctions arguing that it was prejudiced by Cognex's late discovery and then declined to even take the

depositions that it agreed would cure the alleged prejudice.  Microscan's Motion for Sanctions was a stunt.

Microscan also filed frivolous *Daubert* motions seeking to exclude the opinions of both of Cognex's experts in their entirety.  *See* Motion to Exclude Opinions of Dr. Jay Eastman [D.E. 163] and Motion to Exclude Opinions of Mr. James Pampinella [D.E. 160].  Not only were Microscan's *Daubert* motions denied,  Trial Tr. 20:15-24; 20:25-21:15; 641:2-642:19, but many of them were frivolous.

For example, Microscan frivolously moved to exclude the opinions of Cognex's technical expert, Dr. Jay Eastman, on the grounds that he is not a person of ordinary skill in the art of the '487 patent.  Defendants' Memorandum in Support of Motion to Exclude Opinions of Dr. Jay Eastman [D.E. 164] at 6-10.  Dr. Eastman, however, has a Ph.D in optics from and is a professor of optics at the University of Rochester, Trial Tr. 311:8-11, the same school where Microscan's expert got his master's degree, Trial Tr. 648:25-649:5, and Dr. Eastman has more than 40 years of professional experience in optics and barcode scanning, Trial Tr. 452:14-20.

Microscan also sought to exclude the opinions of Dr. Eastman because, in his expert report, he applied proposed claim constructions instead of the claim constructions issued by the Court.  Defendants' Memorandum in Support of Motion to Exclude Opinions of Dr. Jay Eastman [D.E. 164] at 10-13.  However, according to the case management schedule set by the Court, Dr. Eastman issued his expert reports on July 19, 2013 [D.E. 165-1] and August 9, 2013 [D.E. 165-2], long before the Court issued its *Markman* Order on September 17, 2013 [D.E. 70].  Moreover, Microscan's own technical expert also applied proposed claim constructions in his expert reports because he, too, submitted them prior to the Court's *Markman* Order.  If Microscan had an issue with the expert reports, it had six months to raise the issue of

17

supplementing them with Cognex and the Court.  Instead, Microscan waited until the eve of trial

and then sought to ambush Cognex by having its technical expert's opinion excluded.

With respect to Cognex's damages expert, James Pampinella, Microscan sought to

exclude Mr. Pampinella's opinion in its entirety on the ground that Mr. Pampinella didn't

consider that non-U.S. distribution was an available acceptable non-infringing alternative for the

entire damages period.  *See* Defendants' Memorandum in Support of Motion to Exclude

Opinions of Mr. Pampinella [D.E. 161] at 6-12.  Mr. Pampinella, however, had good reason for

not conceding that non-U.S. distribution was an available non-infringing alternative – he saw no

evidence supporting it.  Trial Tr. 492:13-493:21.

The common thread between these Motions is that they were baseless, but if granted they

each could have been effectively case dispositive.  Microscan's tactic appears to have been to

indiscriminately file motions, whether or not it had a good-faith argument, and hope it got lucky.

### 3. Microscan's Disregard for Cognex's Patent Rights Makes This Case Exceptional

The jury's express finding that Microscan's infringement of the '487 patent was willful is

sufficient to establish that this case is exceptional.  *See Amsted*, 24 F.3d at 184 (affirming

determination that case was exceptional based on jury's finding of willful infringement); *Etna*,

2004 WL 1769794 at *15 ("In fact, a court must explain why the case is not exceptional within

the meaning of section 285 if it does not award attorney's fees where it finds willful

infringement.").

As described above, the Supreme Court recently altered the standard for determining

when a case is exceptional, giving district courts greater discretion to declare cases exceptional

even when there has been conduct that is not independently sanctionable.  *See Octane Fitness*,

No. 12-1184, slip op. at 7 (overruling *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.

18

3d 1378 (2005).  However, even under the more rigid *Brooks Furniture* standard, a finding of

willful infringement, by itself, was sufficient to justify declaring a case exceptional.  *See id.* at 8.

The new standard allows courts the flexibility to find *more* cases exceptional beyond those cases

involving conduct, such as willful infringement, previously recognized as sufficient to support a

finding that a case is exceptional.  *See Octane Fitness*, No. 12-1184, slip op. at 9.  The more

flexible standard outlined in *Octane Fitness* embraces the possibility that "a district court may

award fees in the rare case in which a party's unreasonable conduct—while not necessarily

independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.*

The new, more flexible standard does not make willfulness an insufficient ground for finding a

case exceptional.  The jury's finding of willfulness, especially in light of the evidence that

Microscan maintained objectively unreasonable defenses and unnecessarily increased the cost of

the litigation, provides ample support for a finding that this case is exceptional.

**C.**     **An Award of Attorneys' Fees Is Necessary to Adequately Compensate Cognex and
Appropriate to Deter Defendants' Commercial and Litigation Misconduct**

Cognex respectfully requests that the Court exercise its discretion and award Cognex its

reasonable attorneys' fees.  An award of attorneys' fees is necessary to appropriately compensate

Cognex and deter Microscan's commercial and litigation conduct. *See Octane Fitness*, No. 12-

1184, slip op. at 8 n.6.  (suggesting that, among other factors, courts may consider "the need in

particular circumstances to advance considerations of compensation and deterrence" in

determining whether to award fees).

**1.**     **Microscan's Commercial Misconduct Evinces an Utter Disregard for
Cognex's Patent Rights**

An award of attorneys' fees is appropriate to deter Microscan's egregious commercial

conduct.  *See, e.g.*, *Etna*, 2004 WL 1769794 at *15 (awarding attorneys' fees where defendant

targeted a patented product's design and willfully blinded itself to plaintiff's patent rights). In particular, the clear and convincing evidence that supports the jury's finding that Microscan willfully infringed the '487 patent eloquently states the case for an award of attorneys' fees to deter undesirable conduct by Microscan and other commercial actors in the future.

Cognex put Microscan on notice of the infringement allegations against the Mobile Hawk on June 12, 2012. First Amended Complaint [D.E. 24] at 40; Trial Tr. 628:15-19. Thirteen days later, on June 25, 2012, Microscan attempted to conceal its infringement by changing the word "light pipe" to "prism" in certain public-facing documents. Trial Tr. 628:15-19; 628:22-629:7; 631:14-633:7. Two days later, on June 27, 2012, Microscan issued a litigation hold memorandum, indicating that it anticipated a lawsuit was likely. Trial Tr. 631:5-7.

Although Microscan began to refer to the Mobile Hawk's light pipe as a "prism" in some documents at that time, there was no change made to structure of the accused product. Trial Tr. 633:1-633:7; 733:14-18. The "prism" concept, invented by Microscan just days after being accused of patent infringement, would become Microscan's primary non-infringement defense throughout the litigation. *See, e.g.*, Trial Tr. 72:15-22; 702:8-12.

Microscan was sufficiently concerned that it was infringing a valid patent that it experimented with a non-infringing design of the Mobile Hawk's light pipe, one with a polished chamfered distal end. Trial Tr. 617:12-619:12. This non-infringing design was never implemented. Trial Tr. 733:20-734:8. At trial, a Microscan witness testified that, nearly two years after being put on notice of infringement, this testing is "not fully complete." 619:7-12.

Microscan's other, and perhaps most cynical, response to the infringement allegations against the Mobile Hawk was an elaborate, and ultimately unsuccessful, attempt to limit its financial exposure from infringing Mobile Hawk sales. Microscan presented evidence at trial

that it attempted to alter the global distribution of the Mobile Hawk so that units bound for customers outside the United States never passed through the United States, which Microscan believed would allow it to continue selling its infringing Mobile Hawk while avoiding the reach of U.S. patent law with respect to a portion of its sales.  Trial Tr. 562:1-563:12; 565:18-566:3; 751:5-752:20; 754:5-754:24.  However, on cross-examination, Microscan's witnesses could not explain the lack of documentary evidence that the scheme had been implemented.  Trial Tr. 568:8-570:5; 779:6-781:8.  In order to make the case that this distribution occurred, Microscan misled its damages expert, Mr. Bero about its co-defendants' U.S. activities.  781:20-787:3.  Microscan informed Mr. Bero that Code performed no assembly or manufacture in the United States, Trial Tr. 786:15-787:3, while Code's corporate designee testified that Code installed firmware, attached a cable, and tested every Mobile Hawk at its Utah headquarters.  Trial Tr. 782:19-786:14.  Mr. Bero's due diligence did not include speaking to a single person at Code in order to resolve this apparent discrepancy.  Trial Tr. 782:12-18.

## 2.    Microscan's Litigation Misconduct Unnecessarily Increased the Cost of Litigation

An award of attorneys' fees is appropriate to adequately compensate Cognex in light of the litigation tactics Microscan employed to make the enforcement of Cognex's patent rights more expensive.  *See Etna*, 2004 WL 1769794 at *15 (explaining that a relevant factor in determining whether to award attorneys' fees is whether the infringer employed "litigation tactics designed to increase expense"); *Cargill Inc. v. Sears Petroleum & Transport Corp.,* 388 F. Supp. 2d 37, 75-79 (N.D.N.Y. 2005) (holding that litigant's strategy designed to drive up litigation expenses provided "ample basis" to award attorneys' fees).  Moreover, the statutory purpose of the Patent Act is furthered by deterring objectively unreasonable litigation.  *Muller v.*

21

*Twentieth Century Fox Film Corp.*, No. 08 CIV. 2550, 2011 WL 3678712, at *3 (S.D.N.Y. Aug. 22, 2011) (awarding fees under comparable provision of copyright statute).

Here, as discussed above, Microscan maintained substantively weak, objectively unreasonable defenses without good-faith basis and filed numerous meritless motions that made Cognex's enforcement of its patent rights significantly more expensive than it might otherwise have been.  The inference that Microscan maintained these defenses and filed these papers with the intent to make the litigation more expensive flows naturally from the unreasonableness of Microscan's arguments.  Microscan, like any litigant, has every right to defend itself within the applicable rules.  However, the Patent Act expressly empowers the Court to require that Microscan, not Cognex, bear the cost of maintaining objectively unreasonable defenses and swamping Cognex and the Court with meritless motions.

### 3.     The Case Was Not Close

An award of attorneys' fees is appropriate because the case was not close. *S.C. Johnson*, 781 F.2d at 201; *see Creative Internet Adver. Corp. v. Yahoo! Inc.*, 689 F. Supp. 2d 858, 866-68 (E.D. Tex. 2010) (explaining that jury's brief deliberation indicates that a case was not close). Here, after just a few hours of deliberation, the jury unanimously decided in Cognex's favor on every issue and awarded Cognex the full amount of Damages that it requested. Trial Tr. 904:24-905:17.  The jury also unanimously found that, by clear and convincing evidence, Microscan's infringement was willful.  Trial Tr. 905:14-17.

## V.     <u>CONCLUSION</u>

For the reasons set forth above, Cognex respectfully requests that the Court find this to be an exceptional case pursuant to 35 U.S.C.  § 285 and award Cognex its reasonable attorneys' fees and litigation expenses.  Cognex further requests that it be given 30 days from the date of

any such order to submit documentation supporting the amount of its reasonable attorneys' fees and litigation expenses.

DATED:  May 12, 2014

Respectfully Submitted,
COGNEX CORPORATION and COGNEX
TECHNOLOGY AND INVESTMENT LLC


/s/Jacob K. Baron
Jacob K. Baron (*NY Lic. No. 4039905*)
Joshua C. Krumholz
(*admitted pro hac vice*)

Christopher M. Scott (CS5219)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010
christopher.m.scott@hklaw.com

Zachary A. Weinman
(*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
10 St. James Ave., 11th Floor
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850
jacob.baron@hklaw.com
zachary.weinman@hklaw.com
joshua.krumholz@hklaw.com

*Attorneys for Plaintiffs Cognex Corporation and
Cognex Technology and Investment LLC*

#29547566_v5

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2014, a true and correct copy of the foregoing Memorandum in Support of Motion for Attorneys' Fees was served by CM/ECF on all counsel or parties of record on the service list below.

*/s/Jacob K. Baron*
   Jacob K. Baron

Colin J. Garry
cgarry@sidley.com
Sidley Austin LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

Steven J. Hampton
(*admitted pro hac vice*)
shampton@mcandrews−ip.com
Eligio C. Pimentel
(*admitted pro hac vice*)
epimentel@mcandrews-ip.com
Stephen M. Wurth
(*admitted pro hac vice*)
swurth@mcandrews-ip.com
McAndrews, Held & Malloy, LTD
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000

*Attorneys for Defendants Microscan*
*Systems, Inc. and the Code Corporation*